IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PATRICIA BOYER, | Case No. 1:23-cv-00141 |
| Plaintiff, | |
| v. | JUDGE DAVID A. RUIZ |
| AETNA MEDICAID ADMINISTRATORS, LLC, | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

**I. Procedural Background**

On January 24, 2023, Plaintiff Patricia Boyer (Plaintiff) filed a complaint against her former employer, Defendant Aetna Medicaid Administrators, LLC (Defendant), alleging claims under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2 *et seq*.), the Age Discrimination in Employment Act (ADEA), and Ohio Revised Code § 4112.02. (R. 1). Plaintiff seeks damages for front and back pay, compensatory damages for emotional pain and suffering, interest, and attorneys' fees and costs. *Id*. On March 2, 2023, Defendant filed a "Motion to Dismiss Plaintiff's Complaint and to Compel Arbitration of Her Claims." (R. 4). Defendant asserts that, as a condition of Plaintiff's employment, Plaintiff voluntarily agreed that any employment claims (excluding claims under ERISA, for workers' compensation, and unemployment benefits) must be brought and decided only in binding arbitration administered by the American Arbitration Association (AAA). (R. 4-1, PageID# 28).

As of today's date, Plaintiff has failed to file any response.[1]

## II. Factual Allegations

Plaintiff alleges that her employer failed to grant her a religious accommodation from the company's COVID-19 vaccine mandate, resulting in a violation of Title VII of the Civil Rights Act. (R. 1, PageID# 1). Plaintiff asserts that she completed an Accommodation Application, in which she was asked to "specify your Religious Belief or Practice for which you are requiring an accommodation." *Id*. at ¶12. Plaintiff responded by stating that: "[m]y strongly held religious conviction/belief does not support, justify, condone (directly or indirectly) [sic] from innocent human life by abortion, and that to do so is sinning against God!" *Id*. at 13. Plaintiff's Complaint indicates that her employer denied the request for accommodation because she had failed to describe why her religious beliefs were contrary to receiving the COVID-19 vaccinations and that a manager informed her she had one month to obtain the vaccination or face termination. *Id*. at ¶¶15-16. Plaintiff asserts that she had not received any guidance indicating what was expected by her employer in order to qualify as a sufficient description of her religious beliefs. *Id*. at ¶17. Plaintiff was terminated after she did not obtain the COVID-19 vaccine. *Id*. at ¶22.

Plaintiff also alleges that, after she requested a religious accommodation, Defendant subjected her to a hostile work environment and retaliated against her by terminating her

---

[1] It is "well established" that the Court has the authority to grant a motion to dismiss because it is unopposed, as a failure to respond to the motion may be treated "as a confession to" its merit. *Demsey v. R.J. Reynolds Tobacco Co.,* 2005 WL 1917934, at *2 (N.D. Ohio Aug. 10, 2005) (*citing Cacevic v. City of Hazel Park*, 226 F.3d 483, 492 (6th Cir. 2000)); *see also Brown v. Panther Premium Logistics, Inc.*, 2017 WL 6502822, at *1 (N.D. Ohio Sept. 12, 2017) (Gaughan, C.J.) ("This Court may interpret the absence of a response to a motion to dismiss as a waiver of opposition.").

employment. *Id*. at ¶¶ 19, 38-39, 47-48. Finally, Plaintiff asserts Defendant engaged in age discrimination when she was not hired for a position that would have enabled her to work from home. *Id*. at ¶¶ 22, 56.

### III. Analysis

**A. Applicable Law**

The Federal Arbitration Act (FAA) "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); *accord In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020). The Sixth Circuit has explained:

> It provides that a "written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, ... or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must, consistent with this text, "'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) (citation omitted). And we resolve "any doubts concerning the scope of arbitral issues ... in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010).

*In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 381.

As explained by a recent decision from this District:

The Sixth Circuit has set forth four tasks a court must engage in when considering a motion to stay proceedings and compel arbitration:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*McGee v. Armstrong*, 941 F.3d 859, 856 (6th Cir. 2019) (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)). "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout*, 228 F.3d at 714.

*Reulbach v. Life Time Fitness, Inc.*, No. 1:21 CV 1013, 2021 WL 2581565, at *4 (N.D. Ohio June 23, 2021) (Gaughan, J.).

**B. The Arbitration Agreement**

Defendant's motion incorporates a declaration from its Lead Director, HR Policy, Compliance and Workforce Reduction that includes multiple documents pertaining to Plaintiff's employment. In particular, Defendant has produced an offer letter to Ms. Boyer dated March 30, 2015, that "supersedes … [an] offer letter of March 23, 2015." (R. 4-3, PageID# 44, Exh. 1). The offer letter contains the following provision:

> **Arbitration Agreement**: This offer and your acceptance are contingent upon your agreement to use the Company's mandatory/binding arbitration program rather than the courts to resolve employment-related legal disputes. In arbitration, an arbitrator instead of a judge or jury resolves the dispute, and the decision of the arbitrator is final and binding.
>
> The enclosed materials should answer any questions you have about Aetna's Employment Dispute Arbitration Program. With respect to claims subject to the arbitration requirement, arbitration replaces your right and the company's right to sue or participate in a lawsuit. You are advised to, and may take the opportunity to, obtain legal advice before final acceptance of the terms of this offer. You will be required to complete an electronic version of the enclosed Employment Dispute Arbitration Acknowledgement form on your start date.

*Id.* at PageID# 45.

Defendant has also produced a document entitled "Description of Aetna's Employment Dispute Arbitration Program," a two-page, sixteen paragraph document that begins with the "[f]ollowing are provisions of Aetna's Employment Dispute Arbitration Program:"

1. Except as otherwise specified, all employment-related legal disputes between employees and the Company will be submitted to and resolved by binding arbitration, and neither the employee nor the company will file or participate as an individual party or member of a class in a lawsuit in any court against the other with respect to such matters. This shall apply to claims brought on or after the date the employee becomes subject to this Program, even if the facts and circumstances relating to the claim occurred prior to that date and regardless of whether the employee or the Company previously filed a complaint/charge with a government agency concerning this claim.

    \*\*\*

3. \*\*\*A dispute as to whether this Program applies must be submitted to the binding arbitration process set forth in this Program.

5. Unless otherwise agreed to, the arbitration will be administered by the American Arbitration Association (the 'AAA') and will be conducted pursuant to the AAA's Employment Arbitration Rules and Mediation Procedures (the 'Rules'), as modified in this Program in effect at the time the request for arbitration is filed. For more information, visit the AAA website.

(R. 4-4, PageID# 48; Exh. 2).

Finally, Defendant also submitted an electronic form entitled "Aetna Employment Dispute Arbitration Program Acknowledgement" which identifies Plaintiff by name (Boyer, Patty A) and by her Aetna ID. (R. 406, PageID# 56, Exh. 4). The form contains the following acknowledgment:

**Employee Acknowledgement**

I acknowledge that:

[X] *I have read the Arbitration Description and accompanying Questions and Answers and was offered an opportunity to review these materials

[X] *I was advised that with respect to claims subject to arbitration, arbitration replaces my right and the Company's right to sue or participate in a lawsuit. I was further advised of my right to obtain legal advice about arbitration before accepting the terms of my j offer.

[X] *My offer of employment was contingent upon my agreement to use Aetna's mandatory/binding arbitration program rather than the courts to resolve employment-related legal disputes. I agree to do so.

(R. 4-6, PageID# 56, Exh. 4).

5

**C. Analysis**

The Court finds it must enforce the terms of the arbitration agreement entered into by Plaintiff and Defendant. Plaintiff has not filed a response and, thus, has not challenged the existence or validity of the arbitration agreement, nor her assent to be bound by it. She has not challenged the assertion that her complaint contains "employment-related legal disputes," nor does it appear she could credibly do so. According to the arbitration agreement, the only claims excluded from the Arbitration Program are "workers' compensation claims, unemployment compensation claims, and claims under the Employee Retirement Income Security Act of 1974 ('ERISA') for employee benefits." (R. 4-4, PageID# 48, Exh. 2, ¶3).

Further, assuming *arguendo* that a good faith dispute could exist as to whether the Complaint contains "employment-related legal disputes," the Arbitration agreement unambiguously states that "[a] dispute as to whether this Program applies must be submitted to the binding arbitration process set forth in this Program." *Id*. at ¶3.

In addition, the arbitration agreement explicitly states that "[u]nless otherwise agreed, the arbitration will be administered by the American Arbitration Association (the 'AAA') and will be conducted pursuant to the AAA's Employment Arbitration Rules and Mediation." *Id*. at ¶5. The application of the AAA rules is significant, as it undercuts any potential argument that it is this Court's role to determine whether the claims in the Complaint are arbitrable.

The threshold question of arbitrability, often referred to as a "gateway issue," may itself be a question reserved to the arbitrator to decide. The Supreme Court has held that under the FAA "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether

6

their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 202 L. Ed. 2d 480, 139 S. Ct. 524, 529 (2019) ("an agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other") (internal quotation marks and citations omitted). Nevertheless, courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Henry Schein, Inc.*, at 139 S. Ct. at 531.

Defendants argue that where an arbitration agreement expressly calls for arbitration to be governed by the rules of the AAA, that provision is tantamount to an express delegation to the arbitrator to decide the gateway issue of arbitrability. (R. 4-1, PageID# 35-36, citing Rule 6(a) of the AAA rules). The Sixth Circuit Court of Appeals has addressed this issue as follows:

> That brings us to the question in this case. In his arbitration agreement, Piersing agreed that "[t]he American Arbitration Association ('AAA') will administer the arbitration and the arbitration will be conducted in accordance with then-current [AAA Rules]." … And those Rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." … The question for us is whether that's "clear and unmistakable" evidence that Piersing agreed to arbitrate "arbitrability."
>
> There are good reasons to think it is. To start, the AAA Rules clearly empower an arbitrator to decide questions of "arbitrability"—for instance, questions about the "scope" of the agreement. And it's long been settled that parties can incorporate outside documents into a contract if their agreement says as much. Piersing's agreement says as much: it expressly incorporates the AAA Rules into the agreement and even helpfully includes a link to the AAA's website, from which one can easily access the Rules. On its own terms, that's pretty compelling evidence that Piersing agreed to arbitrate "arbitrability."
>
> What the text suggests the case law confirms. The Supreme Court has itself said that the AAA Rules "provide that arbitrators have the power to resolve arbitrability questions." And the Court has itself relied on the incorporation of the AAA Rules to determine what the parties agreed to. It's true that the Court has yet to put these

> pieces together so as to resolve the question in this case. But there's no reason for our court to wait to finish the puzzle. There's little doubt about the final picture.
>
> Our own circuit's precedent counsels—and perhaps compels—the same outcome. In a recent decision, our court relied on the incorporation of the AAA Rules to find that the parties had "clearly and unmistakably" agreed to arbitrate "arbitrability."
>
> ***
>
> What's more, district courts in our circuit have long found that the incorporation of the AAA Rules provides "clear and unmistakable" evidence that the parties agreed to arbitrate "arbitrability." Just another persuasive reason for us to do the same. Finally, consider that every one of our sister circuits to address the question—eleven out of twelve by our count—has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides "clear and unmistakable" evidence that the parties agreed to arbitrate "arbitrability." And the one remaining circuit has precedent suggesting that it would join this consensus. But to the extent that there's any ambiguity in our prior decisions, we officially do so today.

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844-46 (6th Cir. 2020) (citations omitted); *accord Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 582 (6th Cir. 2021) ("By incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability."); *Kentucky Peerless Distilling, LLC v. Fetzer Vineyards Corp.*, 2022 WL 1156963 at *4 (W.D. Ky. Apr. 19, 2022).

Therefore, assuming for the sake of argument that a gateway issue concerning the arbitrability of Plaintiff's claims exists, that is an issue to be addressed by the arbitrator. Under the above cited binding authority, the parties' agreement, by expressly stating that AAA rules will apply, have clearly and unmistakably agreed to arbitrate arbitrability. Reinforcing this delegation to the arbitrator is the express language of the arbitration agreement stating that "[a] dispute as to whether this Program applies must be submitted to the binding arbitration process set forth in this Program." (R. 4-4, PageID# 48, Exh. 2 at ¶3).

8

Given the above authority, the Court finds a binding and enforceable arbitration agreement exists and, therefore, GRANTS Defendant's Motion to Compel Arbitration.

## IV. Conclusion

For the foregoing reasons, Defendants' Motion to Enforce Arbitration and Dismiss this action (R. 4) is GRANTED. This matter is hereby DISMISSED in its entirety.

IT IS SO ORDERED.

Date: August 15, 2023

*s/ David A. Ruiz*
DAVID A. RUIZ
UNITED STATES DISTRICT JUDGE